IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPHINE WASHINGTON, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION |
| : | |
| : | NO. 11-6462 |
| ABM JANITORIAL SERVICES et al, : | |
| : | |
| Defendants. : | |
| : | |
| : | |
| : | |

**MEMORANDUM OPINION**

**Tucker, C. J.**                                                                                   **November 15, 2013**

      Presently before the Court is Defendant McNeil Consumer Healthcare's Motion for Summary Judgment (Doc. 24), Plaintiff's Response in Opposition and Cross-Motion for Discovery Pursuant to Rule 56(d) (Doc. 28), and Defendant MCH's Reply in Support of its Summary Judgment Motion (Doc. 29). Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Defendant McNeil Consumer Healthcare's motion will be *granted*.

      **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

      Because the Court writes primarily for the parties, the Court will discuss only those facts necessary to its decision. Josephine Washington ("Washington" or "Plaintiff") brings this action against Defendants ABM Janitorial Services ("ABM") and McNeil Consumer Healthcare ("MCH" or "McNeil") for unlawful workplace harassment, discrimination, and termination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq; and the Pennsylvania Human Relations Act

("PHRA"), 43 P.S. §951 et seq. Plaintiff has certain cognitive and learning deficiencies, causing difficulty with oral and written communication. The harassment allegedly sustained by Plaintiff included sexual harassment and taunting because of Plaintiff's speech problems and difficulty reading. Plaintiff was employed by ABM, a business providing commercial janitorial services, and assigned to work at MCH's premises in Fort Washington, Pennsylvania. MCH manufacturers consumer health products and is one of the operating companies in the Johnson & Johnson family of businesses.

On behalf of MCH and other Johnson & Johnson operating companies, Johnson & Johnson Corporate Services, Inc. entered into a Master Services Agreement ("MSA") with ABM to provide janitorial cleaning services to various Johnson & Johnson affiliated locations, including MCH's Fort Washington facility. The MSA describes the services ABM was to provide, the quality of service required, and the amount ABM would be paid for its services. The MSA also states that, in addition to ABM-employed janitors, ABM must also provide ABM-employed supervisors to manage them and an ABM-employed Project Manager to oversee ABM's services under the MSA. MCH assigned a MCH employee, Christopher Gowen ("Gowen"), at the site to be the point of contact for ABM.

### A. MCH's Investigation into Washington's Complaints against MCH Hourly Employees

Plaintiff contacted her ABM-employed supervisor, Eric Hawthorne ("Hawthorne") in September 2009 and, for the first time, complained that certain MCH hourly employees were making comments to or about her to which she objected. Mr. Hawthorne brought Plaintiff to Mr. Gowen, the MCH liaison for the ABM contract; Mr. Gowen, in turn, brought the complaints to the attention of MCH's Human Resources Department. At different times, Plaintiff also

complained to ABM about certain ABM-employed workers.  MCH was not involved in ABM's investigation into those complaints.

MCH maintains an Anti-Harassment Policy that prohibits its employees from engaging in inappropriate conduct directed at MCH employees or non-employees at the MCH site.  The Policy affords non-MCH employees the opportunity to complain to MCH if they perceive that any MCH employee is acting inappropriately.  After speaking with ABM Human Resources and her ABM supervisor, Plaintiff provided MCH with two written statements of her concerns, and MCH investigated them.  Plaintiff could name some but not all of the MCH employees whom she said made comments to and about her.  According to MCH, Plaintiff's concerns could not be corroborated.  Nonetheless, in October 2009, MCH conducted mandatory anti-harassment training for all Fort Washington plant employees to prevent any recurrence of the conduct Plaintiff alleged.  MCH Human Resources also provided Plaintiff a business card with contact information in the event she had any other concerns about MCH employees that she wanted to report.  Plaintiff did not report any further concerns.

### B. March 10, 2010 Fitness Center Incident

MCH permits contract workers like ABM employees to use its fitness center at the MCH site.  The fitness center was managed and staffed by an outside firm.  Plaintiff testified that, on March 10, 2010, she went to the fitness center before the start of her shift and was on the treadmill listening to music with her earphones.  At some point, Plaintiff caught herself speaking aloud.  Plaintiff could not recall what she said; however, she did recall that she said aloud that she was "tired of Eric [Hawthorne] treating [her] like [she's] retarded." (Washington Dep. 6/7/13 112:20-22.)

The fitness center manager reported to MCH's Human Resources Manager, Hilary Profrock ("Profrock"), that Plaintiff had been talking loudly in the fitness center and disturbing others. Profrock then called ABM's Human Resources Manager, William George ("George"), to advise him of the report. The next day, March 11, 2010, Plaintiff was sent home from work. Plaintiff subsequently received a letter from Mr. George via certified mail, dated March 11, 2010, stating that she was terminated effective that day. The letter stated the reason for Plaintiff's termination was her "continuous disruptive behavior at the job site," and outlined a number of occasions on which Plaintiff had allegedly either been disruptive at the job site and/or was counseled by ABM about her disruptive behavior. (Def.'s Ex. J, "March 11, 2010 Termination Letter.") In particular, with respect to MCH, the termination letter stated: "Our customer brought to our attention that on 3/10/2010 you exhibited disruptive behavior while using the customer Fitness Center. You continued to behave in a manner that is unacceptable in the workplace and will no longer be tolerated and thus your employment with ABM Janitorial has been terminated." (Id.)

### C. Procedural History

Plaintiff filed the instant lawsuit against ABM and MCH on October 14, 2011. It has been MCH's position, since the inception on this suit, that it is not a proper defendant in this action because it did not employ or jointly employ Plaintiff. The Court held a Rule 16 Conference with the parties on September 21, 2012, at which time MCH again expressed concerns that it was not a proper party to this action. Accordingly, the Court entered a scheduling order that (1) referred this matter to a magistrate judge for a settlement conference, and (2) specified that if this matter did not settle, the Court would grant 90 days for discovery and that the "focus of this discovery period [would] be on Defendant McNeil Consumer

4

Healthcare." Further, the scheduling order granted MCH leave to file an early motion for summary judgment.

MCH now moves for summary judgment on the grounds that ABM, and not MCH, is Plaintiff's employer. Plaintiff contends the record evidence demonstrates that MCH exercised sufficient control — both directly and indirectly — over ABM employees to give rise to a genuine issue of fact as to whether ABM and MCH were Plaintiff's joint employers. Plaintiff submits the following: (1) the record supports her contention that MCH is her joint employer; (2) the Third Circuit requires that a joint employer determination be made upon a factual record and that many of these facts are exclusively within the control of MCH; and (3) Washington cross-moves pursuant to Fed. R. Civ. P. 56(d) to take depositions of certain MCH employees who have knowledge of these facts.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56(a); see also Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its

burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986).  Once the moving party has carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001).  The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

### III. DISCUSSION

A. MCH's Motion for Summary Judgment

Under Title VII, the ADA, and the PHRA, only "employers" can be held liable for discrimination. See 42 U.S.C. § 2000e-2(a) (Title VII); 42 U.S.C. § 12112(a) (ADA); 43 Pa. Stat. Ann. § 955(a) (PHRA).  Plaintiff argues that the Court should deny MCH's Motion for Summary Judgment because MCH, along with ABM, was Plaintiff's "joint employer."  In NLRB v. Browning–Ferris Industries of Pennsylvania, a case arising under the National Labor Relations Act ("NLRA"), the Third Circuit explained that a joint employment relationship may exist when

6

"one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." 691 F.2d 1117, 1123 (3d Cir.1982). The Third Circuit concluded that "where two or more employers exert significant control over the same employees — where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment — they constitute 'joint employers' within the meaning of the NLRA." Id. at 1124 (internal citations omitted).

In Graves v. Lowery, the Third Circuit extended the "joint employer" theory of liability to the Title VII context. 117 F.3d 723, 727 (3d Cir.1997).[1] Additionally, as explained by Judge Yohn in Myers v. Garfield & Johnson Enterprises, Inc., district courts in the Third Circuit have distilled joint employer analysis in Title VII cases to three factors:

> (1) Authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;
> (2) Day-to-day supervision of employees, including employee discipline; and
> (3) Control of employee records, including payroll, insurance, taxes and the like.

679 F. Supp. 2d 598, 607-08 (E.D. Pa. 2010) (internal citations omitted). "No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." Id. at 608 (internal citations omitted); see also In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig., 683 F.3d 462, 467 (3d Cir. 2012) (finding that the district court need not "decide that *every* factor weighs against joint employment") (emphasis in original) (citing Zheng v. Liberty Apparel Co., 355 F.3d 61, 76–77 (2d Cir.2003)). Further, the employee's beliefs and expectations are also relevant in determining whether there is joint

---

[1] Further, claims brought pursuant to Title VII and the PHRA are analyzed under the same standard. See Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n. 6 (3d Cir.2006) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)).

employer status. Graves, 117 F.3d at 727–29. In sum, determination of whether a defendant is a "joint employer" under Title VII requires careful consideration of *all* the circumstances surrounding the work relationship. See In re Enter. Rent-A-Car., 683 F.3d at 469 ("[D]istrict courts should not be confined to 'narrow legalistic definitions' and must instead consider all the relevant evidence, including evidence that does not fall neatly within one of the above factors.") (internal citations omitted).

Here, Plaintiff asserts that "[e]ven though McNeil contracted with ABM for ABM to provide cleaning services at McNeil's facility, the evidence of record demonstrates that McNeil exercised sufficient control, directly and indirectly, over ABM employees to give rise to a genuine issue of fact as to whether there was a joint employer relationship, thus defeating McNeil's summary judgment motion." (Pl.'s Resp. Opp'n 5.) Plaintiff further appears to suggest that the question of whether a joint employment relationship exists cannot be determined at the summary judgment stage. (Pl.'s Resp. Opp'n n. 2.)

Plaintiff is incorrect on both counts. The Court first notes that the MSA is not between MCH and ABM, but between Johnson & Johnson and ABM. On behalf of MCH and other Johnson & Johnson operating companies, Johnson & Johnson entered into the MSA with ABM to provide janitorial cleaning services to various Johnson & Johnson-affiliated locations, including MCH's Fort Washington location.

The Court further notes that Plaintiff misstates the appropriate legal standard in asserting that MCH's exercise of "indirect control" over Plaintiff is sufficient to create a joint employment relationship. As explained by the Third Circuit in In Re Enterprise Rent-A-Car, in employment discrimination cases arising under Title VII, "direct control over the employee" is required in

order to find that a joint employment relationship exists. 683 F.3d at 469.[2] In addition, the Court notes that Plaintiff has provided no legal support for her assertion that the joint employer determination cannot be made at summary judgment. To the contrary, as recently as In Re Enterprise Rent-A-Car, the Third Circuit endorsed and affirmed the district court's grant of summary judgment where the dispositive issue was joint employer status. Id. at 467 ("The mere existence of some disputed fact will not result in the denial of a summary judgment motion….") Further, the only cases Plaintiff relies on in suggesting that summary judgment is not appropriate here are the aforementioned Graves and Myers. Both of these cases are inapposite, however, because both involved motions to dismiss where there had been no opportunity for discovery. See Graves, 117 F.3d at 729 (declining to speculate as to whether the plaintiffs could ultimately prevail under a joint employer theory, but finding that the employment relationship between the plaintiffs and the potential joint employer was "sufficiently ambiguous" such that the plaintiffs' claim "should not have been dismissed at the pleading stage."); Myers, 679 F. Supp. 2d at 611 (denying the defendant's motion to dismiss the plaintiff's Title VII and PHRA claims brought pursuant to a joint employer theory of liability because plaintiff had not yet had the opportunity to conduct discovery). In the instant matter, Plaintiff has been granted ample time (almost a year) to conduct discovery. Indeed, the Court's initial scheduling order mandated that the initial focus of the discovery period should be on MCH, for the precise purpose of determining whether Plaintiff could offer evidence to support her claim that MCH was her joint employer. Thus, the

---

[2] This is in comparison to cases arising under the Fair Labor Standards Act, where "sufficient *indirect* control" over an employee is enough to find a joint employment relationship. In re Enter. Rent-A-Car, 683 F.3d at 469 (emphasis in original). The Third Circuit reached this distinction by applying the "Lewis test" outlined in Lewis v. Vollmer of America, No. 05–1632, 2008 WL 355607 at *4 (W.D.Pa. Feb. 7, 2008). The Lewis test consists of the same factors as outlined in Myers.

Court has given Plaintiff every opportunity to conduct precisely the kind of "careful factual inquiry" that Graves calls for. 117 F.3d at 729.

Turning to the facts of this case, the Court must determine whether application of the factors outlined in Myers, as well as any other relevant record evidence, presents a genuine issue of material fact as to whether MCH, along with ABM, was Plaintiff's joint employer. The Court finds that the overwhelming record evidence supports the conclusion all of these factors weigh in favor of finding that MCH was not Plaintiff's joint employer.

> **1. Authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours.**

With respect to the first factor, the undisputed facts are as follows. Plaintiff was hired by ABM in 1999 and assigned to MCH's Fort Washington facility. (Washington Dep. 5/17/13 100:20-22, 102:12-103.18; see also Def.'s Ex. E, Washington's Employment Application to ABM.) ABM issued Plaintiff's work rules, which Plaintiff accepted and signed. (Washington Dep. 5/17/13 108:10-24; see also Def.'s Ex. F, "ABM Employee Instructions, Information, and Work Rules.") ABM also issued Plaintiff an employee handbook. (Washington Dep. 5/17/13 112:5-15; see also Def.'s Ex. G, "Service Worker Policy Handbook.") MCH did not issue work rules to Plaintiff, and Plaintiff could not recall ever receiving an employee handbook from MCH. (Washington Dep. 6/14/13 171:1-8, 177:16-178:3.) ABM assigned Plaintiff to work the first shift and clean certain restrooms. (Id. at 172:9-173:4.)

As an ABM employee, Plaintiff was a member of Local 32BJ of the Service Employees International Union (the "Union") (Washington Dep. 5/17/13 107:10-12.) As federal law requires, ABM negotiated the "wages, hours, and other terms and conditions of employment"

with Plaintiff's Union. 29 U.S.C. § 158(d).  Plaintiff agrees that ABM compensated her at an hourly rate set by the Union contract. (Washington Dep. 6/14/13 178:8-180:8.)

Plaintiff further concedes that MCH had no role in a grievance she filed on March 15, 2010 concerning ABM's decision to terminate her employment. (Washington Dep. 6/14/13 166:8-12; see also Def.'s Ex. C, Service Employees International Union Report of Grievance dated March 15, 2010.)  Plaintiff testified that MCH did not have the authority to fire her, and that ABM could have assigned her to a different company for which ABM provided commercial cleaning services had it not chosen to terminate her employment. (Washington 6/14/13 166:13-17.)

Not to be detoured by these facts, Plaintiff argues that MCH had the authority to "promulgate [her] work rules" because Plaintiff was covered by MCH's Anti-Harassment Policy. MCH concedes: "Although it had no legal obligation to do so, MCH investigated the complaints Plaintiff reported against male and female hourly MCH employees; could not corroborate them; and conducted mandatory anti-harassment training after which Plaintiff made no further complaints about MCH employees." (Def.'s Mot. Summ. J. 2.)  Plaintiff, seizing on this statement and again attempting to analogize her case to Graves and Myers, contends that MCH's "retention of authority to enforce its sexual harassment policy" is a basis for finding a joint employer relationship. (Pl.'s Resp. Opp'n 8.) More specifically, Plaintiff asserts:

> McNeil's own actions, cited in its summary judgment motion, plainly suggest that McNeil believed that Washington was covered by its sexual harassment policy, which it sought to enforce.  If that were not the case, McNeil presumably would not have (1) investigated Washington's claims; or (2) conducted sexual harassment training in the workplace to address the harassment of Washington.  Not only did McNeil conduct its own investigation into Washington's complaints, it involved itself in ABM's investigation as well.

(Id.)  The Court wholly disagrees with Plaintiff's argument. At the most basic level, Plaintiff's argument ignores the fact that MCH's Anti-Harassment Policy expressly applies to both MCH employees and non-employees.  Specifically, MCH's Anti-Harassment Policy states, in relevant part:  "The Company will not tolerate harassment of employees by manager, supervisors, or co-workers.  The Company also will attempt to protect its employees from harassment by non-employees in the workplace. *Similarly, the Company will not tolerate harassment by its employees by non-employees with whom the Company has a business, service, or professional relationship*." (Ex. U, MCH's "Equal Employment Opportunity Policy" at 1) (emphasis added).  Thus, the fact that Plaintiff — like all non-employees — was extended protection by MCH's Anti-Harassment Policy does not create a genuine issue of material fact as to whether Plaintiff was an MCH employee.

Further, as a matter of sound public policy, Plaintiff's position is untenable.  Merely extending the protection of an anti-harassment policy to non-employees should not be enough to convert every non-employee of a company into an employee.  If every employer ran the risk of a joint employer claim simply because it permitted non-employees to raise concerns under its anti-harassment policy — and despite all other evidence to the contrary — then no employer would extend protection to non-employees.  The joint employer theory of liability surely was not intended to encourage employers *not* to extend non-employees protection from its employees' conduct in the workplace.

Plaintiff next contends that "[t]here is further evidence that McNeil had the right to control ABM employees' conduct, directly or indirectly, through McNeil's control over ABM, as evidenced by the Master Services Agreement between McNeil and ABM."  In this regard, Plaintiff cites in isolation numerous provisions of the MSA which, according to her, evidence

McNeil's control over ABM workers. (See Pl.'s Resp. Opp'n 3-4.)  The Court also finds this argument unavailing.  The Court has already discussed why a showing of indirect control is insufficient in establishing a joint employment relationship.  In addition, the Court has already addressed the fact that the MSA is not directly between MCH and ABM, but rather between Johnson & Johnson and ABM.  The MSA is a very general document which is broadly applicable to all of Johnson & Johnson's operating companies, not just MCH's Fort Washington site.  It describes the services ABM was to provide, the quality of service required, and the amount ABM would be paid for its services. (Connolly Decl. ¶ 6.; see generally Def.'s Ex. C, "Master Services Agreement.")  All of these facts undercut Plaintiff's assertion that the MSA was somehow intended to govern the specific work environment at the Fort Washington site.  The MSA does not, and was not intended to, establish employment-related work rules for ABM employees. (Connolly Decl. ¶ 5.)

   None of the provisions cited by Plaintiff overcomes the plain language of the MSA that ABM's relationship to MCH was that of an independent contractor.  Alternatively, as stated by Plaintiff, Mr. George, and the MSA itself, MCH was ABM's "customer."  Moreover, Plaintiff ignores numerous provisions of the MSA which make clear that ABM maintained direct control over its employees while the employees were working at their assigned locations.  For instance, the MSA provides:

> While on Customer's premises at any time, Service Provider [ABM] shall comply with all rules and regulations of Customer [MCH] and those applicable to Customer's premises.  *Service Provider shall be responsible for its employees and agents while on Customer's premises*.  Service Provider shall ensure that its employees and agents proceed directly to the site of the work and do not enter any other part of Customer's premises.

(Def.'s Ex. C at 5.)  The general, indirect requirement that ABM-employees follow the rules and regulations of MCH while on the MCH premises does not negate the clear fact that, under the

MSA, ABM retained direct responsibility for its employees.  Furthermore, under the MSA, ABM was required to and did provide ABM-employed supervisors to manage the ABM-employed janitors.  (Connolly Decl. ¶ 7; Def.'s Ex. C at 10.)  Likewise, ABM was also obligated to and did provide an ABM-employed Project Manager to oversee ABM's services under the MSA. (Id.)

### 2. Day-to-day supervision of employees, including employee discipline.

With respect to the second factor, Plaintiff concedes that ABM supervised her work on a day-to-day basis (Washington Dep. 5/17/13 41:9-15; see also Washington Dep. 6/14/13 89:15-90:7.)  Further, as William George (ABM's Human Resources Manager) testified, ABM and MCH operate separate Human Resources Departments. (George Dep. 7:22-8:1, 9:21-23.)  Further, any discipline Plaintiff received came from ABM. (See Def.'s Ex. J, "Corrective Action" Notices and ABM's "March 11, 2010 Termination Letter.")  There is evidence in the record that, prior to her termination, Plaintiff had a history of supposed infractions.  However, there is no indication in the record that MCH was ever involved with the disciplinary steps taken by ABM against Plaintiff on those occasions.  For instance, Plaintiff admitted that MCH had no role in a meeting she had with Mr. George and her Union representative on February 21, 2010, in which ABM placed her on paid leave. (Washington Dep. 6/14/13 30:21-32:6.)  Plaintiff also conceded that MCH had no role in the grievance she subsequently filed under the Union contract against ABM on February 23, 2013 concerning alleged harassment. (Washington Dep. 6/7/13 139:9-140:8; see also Def.'s Ex. L, "Service Employees International Union Report of Grievance dated February 23, 2010.)  MCH also played no role in the meeting Plaintiff had with Mr. George when she returned from leave on March 2, 2010, in which Mr. George told her "that she needed to work and act professionally while on the job" and "if her disruptive behavior did not stop, she would be subject to discipline including termination." (See George Dep. 99:17-100:21;

Washington Dep. 6/7/13 225:3-11; Def.'s Ex. N, George's March 2, 2010 "Note to File" Regarding Meeting with Washington.")

Nonetheless, Plaintiff suggests that because "McNeil's Human Resources department provided ABM's Human Resources Manager with a list of question to be used by ABM in interviewing its employees about Washington's complaints," this somehow indicates that MCH was involved in the discipline of ABM employees. (Pl.'s Resp. Opp'n 4.)  However, the record is clear that MCH did not interview the ABM employees whom Plaintiff claimed harassed her. MCH only interviewed its own employees (Pl.'s Ex. G, MCH's Investigation Notes.)  Moreover, ABM's Human Resources Manager William George testified as follows:

> Q:   After you spoke with [Josephine], Eric Hawthorne and Barry Burton on September 1st, 2009, what did you do next?
>
> A:   …. At that point in time I believe I was in communication with Laura DiSabatino with McNeil.  They [McNeil] had wanted to speak to Josephine to continue *their part* of the investigation.  I informed them since *she was our employee* that I would like to be her representative and the one to speak to her.  And if they had any questions, I would be more than willing to ask those questions for them. They then supplied me with questions they'd like me to ask and I went back and met with Josephine for a second time.
>
> Q:   You can correct me if I'm wrong but Laura wanted to talk to Josephine and your response was that she worked for ABM and you wanted to be the one to question her?
>
> A:   Correct

(George Dep. 55:16-56:16) (emphasis added).  Mr. George's uncontradicted testimony establishes that MCH was not at liberty to unilaterally question Plaintiff about her complaints because Plaintiff was not its employee.  Mr. George's testimony also confirms that MCH only submitted the list of questions at Mr. George's request, not because MCH was improperly inserting itself into ABM's disciplinary process.

Plaintiff then argues that because ABM terminated Plaintiff after MCH reported Plaintiff's allegedly "disruptive" behavior at the fitness center to ABM, a jury could "reasonably believe that McNeil had significant influence over ABM's decision to fire Washington." (Pl.'s Resp. Opp'n 8-9.)  Again, however, indirect control or influence is insufficient.  The mere fact that MCH's reported the fitness center incident to ABM (and thereby influenced ABM's decision to terminate Plaintiff) does not lead to the conclusion that MCH directly controlled the disciplinary process. Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 495 (W.D. Pa. 2007) ("[T]he simple fact that a major client can pressure an employer into firing a particular individual does not transmute that client into that individual's employer." (quoting Morrison v. Magic Carpet Aviation, 383 F.3d 1253, 1255 (11th Cir.2004)); Cimino v. Borough of Dunmore, No. 02-1137, 2005 WL 3488419 at *8 n. 4 (M.D. Pa. Dec. 21, 2005) ("That [plaintiff's actual employer] may pay heed to the complaints of its customers does not render all of its customers co-employers of its employees.")  The authority to terminate Plaintiff at all times remained with ABM. (George Dep. 130:1-10.)

### 3. Control of employee records, including payroll, insurance, taxes and the like.

With respect to the third factor, the record demonstrates that only ABM maintained Plaintiff's employment records. (Def.'s Ex. I, "Defendant ABM Janitorial Services- Mid-Atlantic, Inc.'s Responses to Plaintiff's Request for Production of Documents."  Plaintiff has presented no evidence which suggests that MCH also maintained control of employee records for ABM workers.  Moreover, other "relevant evidence" also demonstrates that MCH was not Plaintiff's joint employer. In re Enter. Rent-A-Car., 683 F.3d at 469.  At no time did Plaintiff herself ever call MCH her "employer." (See generally Def.'s Ex. P) (collecting numerous documents, including Plaintiff's resume and her EEOC charge, in which Plaintiff names ABM as

her employer.) The record demonstrates that it was Plaintiff's belief was that ABM was her sole employer. Graves, 117 F.3d at 727–29. Further, it was Plaintiff's understanding that MCH was ABM's "customer." (Def.'s Ex. Q, EEOC Charge dated June 11, 2010.) ABM is also, apparently, of the understanding that MCH is its "customer," not its co-employer. (See Def.'s Ex. R, ABM's March 11, 2010 Termination Letter) ("Our *customer* brought to our attention that on 3/10/2010 you exhibited disruptive behavior while using the *customer* Fitness Center") (emphasis added).

Accordingly, based on the foregoing, the Court finds that Defendant MCH was not Plaintiff's joint employer. Because MCH was not Plaintiff's joint employer, MCH cannot be held liable for Plaintiff's claims under Title VII, the PHRA, and the ADA.[3] MCH's Motion for Summary Judgment will therefore be granted.

### B. Plaintiff's Cross-Motion for Additional Discovery Pursuant to Fed. R. Civ. P. 56(d)

Finally, Plaintiff cross-moves pursuant to Fed. R. Civ. P. 56(d) to take additional discovery. Rule 56(d) states, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may: (1) defer considering the motion or deny it, (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d).

Here, in the affidavit submitted by Plaintiff's counsel, Plaintiff requests additional time to conduct the deposition of an MCH representative who can authenticate the MSA. (Pl.'s Ex. A at ¶¶ 14-16.) Specifically, according to Plaintiff, an MCH representative would be able to testify to

---

[3] Additionally, with respect to Plaintiff's ADA claim against MCH, the Court notes that Plaintiff's EEOC charge against MCH did not allege disability discrimination. (See Def.'s Ex. P, "Charge of Discrimination.") Therefore, independent of all the other reasons set forth *supra*, Plaintiff's ADA claim against MCH cannot proceed because it has not been administratively exhausted. See 42 U.S.C. § 2000e-5(e)(1).

the terms of the agreement and how they were implemented. (Pl.'s Resp. Opp'n 11.)  The Court finds that no additional discovery is necessary on the MSA or its terms.  This is not a situation where a defendant's summary judgment motion has been filed prematurely, and therefore the plaintiff needs additional time to conduct discovery in order to substantiate her claims.  On the contrary, Plaintiff was granted almost a year to conduct the discovery on the precise issue of joint employer liability.  Plaintiff also knew, at least as early as the Rule 16 Conference on September 21, 2012, that MCH would move for summary judgment on this precise issue if Plaintiff did not voluntarily dismiss MCH as a defendant. Plaintiff has had more than sufficient time to conduct the discovery she now seeks.  Further, the record has been sufficiently developed for summary judgment purposes, and the Court has little difficulty in finding in MCH's favor.  See Abulkhair v. Citibank & Associates, 434 F. App'x 58, 62 (3d Cir. 2011) cert. dismissed, 132 S. Ct. 1925, 182 L. Ed. 2d 766 (U.S. 2012); Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 459 (3d Cir. 2003); Mid-S. Grizzlies v. Nat'l Football League, 720 F.2d 772, 780-81 (3d Cir. 1983).

## IV.     CONCLUSION

For the reasons set forth above, Defendant MCH's Motion for Summary Judgment is granted and Plaintiff's Cross-Motion for Additional Discovery Pursuant to Fed. R. Civ. P. 56(d) is denied.

An appropriate order follows.